UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Juan Solis-Diaz,<br><br>  Plaintiff<br><br>  v.<br><br>Las Vegas Metropolitan Police Department Officer S. Tompkins,<br><br>  Defendant | Case No.: 2:12-cv-00619-JAD-GWF<br><br>**Order Granting in Part and Denying in Part Motions in Limine**<br><br>**[ECF Nos. 60, 63]** |

Juan Solis-Diaz sues Metro Officer Scott Tompkins for excessive force because the officer shot Solis-Diaz twice as he stood holding an assault rifle in his own garage. In anticipation of the jury trial of this civil-rights claim, the parties raise two evidentiary issues: (1) should the jury get to consider the "contractual adjustment" that Sunrise Hospital made to Solis-Diaz's bill, or must that discount be excluded under the collateral-source rule; and (2) will the jury learn that Solis-Diaz was charged with—and a jury acquitted him of—assault with a deadly weapon arising from this incident. Because the hospital's write-off is a benefit from a third party unrelated to the defendant, it falls within the collateral-source rule and will be excluded from trial. And although the jury will necessarily learn that the arrest in which Solis-Diaz claims excessive force was used was one for assault with a deadly weapon, evidence that he was formally charged with, and acquitted of, that charge will be excluded because its probative value is substantially outweighed by the danger of confusing the issues and misleading the jury.

**Discussion**

The Federal Rules of Evidence do not expressly authorize motions in limine, but district courts can rule on pretrial evidentiary motions under their "inherent authority to manage the course of trials."[1] Pretrial consideration avoids the futile attempt to "unring the bell" when jurors see or

---

[1] *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984).

1

hear inadmissible evidence, even when it is stricken from the record.[2]  It may also save time by minimizing side-bar conferences and other trial disruptions and by preventing the need to call some witnesses.[3]  Limine rulings are provisional; they are "not binding on the trial judge [who] may always change [her] mind during the course of a trial."[4]

The parties have filed cross-motions in limine to address Solis-Diaz's Sunrise Hospital medical bill and his acquittal on the assault-with-a-deadly-weapon charge by the state-court jury. Solis-Diaz argues that the hospital's $64,000 write-down of his bill—designated as a "contractual adjustment"—is collateral-source evidence that should be excluded from trial.[5]  Tompkins counters that the hospital's own reduction of the amount owed does not qualify as a collateral-source payment and it would be unfairly prejudicial to permit Solis-Diaz to claim that he incurred hospital bills of $77,000 when the hospital-applied discount left him owing just over $13,000.[6]  Tompkins also seeks to exclude[7]—and Solis-Diaz wants to introduce—evidence that Solis-Diaz was charged with and acquitted of the assault-with-a-deadly-weapon charge arising from this incident.[8]

**A.  The contractual adjustment to Solis-Diaz's Sunrise Hospital bill will be excluded under the collateral-source rule.**

After he was shot by Tompkins, Solis-Diaz was treated for his two gunshot wounds at Sunrise Hospital. The single-page Sunrise Hospital statement attached to Tompkins's motion in

---

[2] *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (quoting *Kelly v. New W. Fed. Savs.*, 49 Cal. App. 4th 659 (Cal. Ct. App. 1996)).

[3] *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

[4] *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000) (citing *Luce*, 469 U.S. at 41–42 (noting that in-limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

[5] ECF No. 60 at 3.

[6] ECF No. 65 at 4–5.

[7] *Id*. at 5.

[8] ECF No. 60 at 4.

2

limine[9] reflects total charges of $77,178.25, and a "CONTRACTUAL ADJ" (which plaintiff acknowledges was a contractual adjustment[10]) reducing the total bill by $64,057.95 and leaving just $13,120.30 "due from patient."[11] The next line of the bill reflects that the "UNINSURED DISCOUNT PLAN [was] BILLED," but it does not reflect how much.[12]

In his motion in limine, Solis-Diaz argues (citing to no authority other than generally referencing FRE 401 and 403) that "the full Sunrise billing is relevant for presentation to the jury, as the full billing proves the entire nature and extent of all the treatment services provided by Sunrise Hospital to Solis," and that "[t]he extent of that care . . . is a matter of direct consequence to Solis'[s] overall damage claims."[13] Even if the hospital unilaterally discounted the bill, Solis-Diaz argues, the $77,000 in care he received "equated to actual, hard damages and costs incurred as a result of" his gunshot wounds.[14] He concludes this argument with the offhand sentence, "The collateral source rule also supports the admission of the full Sunrise billing at trial,"[15] but he does not explain why until his reply: the collateral-source rule excludes evidence not just of *payments* by third parties, but of *benefits conferred* by third parties, and the deep discount that Sunrise Hospital gave Solis-Diaz was exactly that type of collateral-source benefit.[16] Tompkins, who addressed the collateral-source rule in his opposition, argues that the rule should be limited to actual payments that reduce a plaintiff's net damages, and "[b]ecause no one pays [a] write-off, it cannot possibly constitute

---

[9] ECF No. 65 at 10.  Plaintiff also relies on this document.  *See* ECF No. 66 at 3.

[10] *See id.* at line 14.

[11] ECF No. 65 at 10.

[12] *Id*.

[13] ECF No. 60 at 2.

[14] *Id*. at 3.

[15] ECF No. 60 at 3, lines 18–19.

[16] ECF No. 66 at 3.

payment of any benefit from a collateral source."[17]

But the collateral-source rule does not apply merely to third-party payments; it applies to gratuitous medical services, too. As the Tenth Circuit explained in *Prager v. Campbell County Memorial Hospital*, "The collateral-source rule, which derives from the common law, holds that 'payments made to *or benefits conferred on* the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.'"[18] The rule "does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him."[19]

Courts applying the rule to gratuitously provided or discounted medical services reason that a tortfeasor "should not be allowed to benefit because the victim of his wrongdoing was able to receive gratuitous medical and nursing services for his injuries."[20] As the New Mexico District Court

---

[17] ECF No. 65 at 4 (quoting *Robinson v. Bates*, 857 N.E.2d 1195, 1200 (Ohio 2006), cited in *Schlegel v. Li Chen Song*, 493 F. Supp. 2d 918, 920 (N.D. Ohio 2006)).

[18] *Prager v. Campbell County Mem. Hosp.*, 731 F.3d 1046, 1058–59 (10th Cir. 2013) (emphasis added). Because this case arises under federal-question jurisdiction, I apply the federal, common law collateral-source rule. *See Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986); *see also Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 534 (9th Cir. 1962) (applying federal collateral-source rule in Jones Act case) (cited with approval in *McLean v. Runyon*, 222 F.3d 1150 (9th Cir. 2000)). But I would reach the same result under Nevada's collateral-source rule, which also applies broadly to third-party payments and benefits, with limited exceptions that do not apply here. *See Iazzetta v. Smith's Food & Drug Centers*, 2016 WL 527047, *5–6 (D. Nev. Feb. 9, 2016) (explaining Nevada's collateral-source doctrine); *Tri-Cty. Equip. & Leasing v. Klinke*, 286 P.3d 593, 598 (Nev. 2012) (Gibbons, J., concurring) (noting that applying the collateral-source rule to bar "introduction of evidence showing medical provider discounts or write-downs is consistent with a majority of jurisdictions that have addressed this issue" under the common-law collateral-source doctrine).

[19] Restatement (Second) of Torts § 920A cmt. b. It also may be that the contractual adjustment to Solis-Diaz's bill was made because of an arrangement with the administrator of the "UNINSURED DISCOUNT PLAN" that the hospital bill reflects was billed. If this were the case, the discount would be treated just like other contractual discounts negotiated by insurance providers and other third-party payers, and the collateral-source rule would apply.

[20] *Degen v. Bayman*, 241 N.W.2d 703, 708 (S.D. 1976) (collecting cases); *Simms v. United States*, 839 F.3d 364, 369 (4th Cir. 2016) (noting under West Virginia's collateral-source rule that "when a tortfeasor causes a plaintiff an injury requiring medical services, the plaintiff is entitled to recover the reasonable value of those services, regardless of the amount actually paid or whether the services were rendered gratuitously."); *see also Pipkins v. TA Operating Corp.*, 466 F. Supp. 2d 1255, 1258 (D.N.M. 2006) (noting that the collateral-source rule most often applies to insurance coverage, but it also applies when "due to a healthcare provider's gratuitous treatment, a plaintiff neither incurs nor is responsible for payment of the reasonable value of medical services, but nonetheless can claim and recover compensation for that value from the tortfeasor") (quoting *Lopez v. Safeway Stores, Inc.*, 129

4

explained when evaluating the contours of the collateral-source rule in *Pipkins v. TA Operating Corp.*:

> In the case of gratuitous medical services, the plaintiff incurs no financial liability. Yet, regardless of the plaintiff's lack of financial liability, the collateral source rule applies because the plaintiff has received a benefit from a source collateral to the defendant. Gratuitous treatment, therefore, constitutes a collateral contribution and triggers application of the collateral source rule.
>
> Contractual write offs reflect a situation analogous to a health care provider's gratuitous provision of medical services and thus yield a similar result under the collateral source rule.[21]

This rationale is also consistent "with a fundamental tenet of the collateral-source rule: that a tortfeasor may not reap the benefit of any special payment arrangement involving a collateral source."[22] And although permitting a plaintiff to seek his full, undiscounted medical expenses may give the plaintiff a windfall, the law has long been comfortable with this result:

> As between the injured person and the tortfeasor, the former's claim is the better. . . . Collateral source funds are usually created through the prudence and foresight of persons other than the tortfeasor, frequently including the injured person himself. They are intended for the benefit of the injured person, and not for that of the person who injures him. That intention should be effectuated.[23]

By its contractual adjustment, Sunrise Hospital effectively gave Solis-Diaz $64,057.95 in gratuitous medical services. Under the collateral-source rule, this benefit—for whatever reason it was given—enures to him, not to the defendant. Accordingly, I find that the hospital's contractual adjustment qualifies as collateral-source evidence that may not be introduced at trial. In the event that either party intends to introduce the Sunrise Hospital bill as evidence of the value of the services provided to Solis-Diaz, the adjustment and the resulting amount due must be redacted.

---

P.3d 487, 492 (Ariz. 2006)).

[21] *Pipkins*, 466 F. Supp. 2d at 1260–61.

[22] *Prager*, 731 F.3d at 1059.

[23] *Gypsum Carrier, Inc.*, 307 F.2d at 534.

**B.   Evidence of Solis-Diaz's formal criminal charge and acquittal will be excluded.**

Solis-Diaz next seeks to introduce evidence that he was charged with—and a jury acquitted him of—assault with a deadly weapon for the conduct he was arrested for on the night he was shot. He argues that "It would be unfair to [him] to allow the jury to infer that [he] was arrested following being shot twice by Officer Tompkins and to then deprive the jury of knowledge regarding the ultimate disposition of the criminal case."[24] But, as Tompkins points out in response, the issue in this case is whether the officer used excessive force in effectuating Solis-Diaz's lawful arrest. It does not matter that the state formally charged him with—and he was ultimately acquitted of—an assault; the state court found (and Solis-Diaz does not challenge) that the officer had probable cause to effectuate Solis-Diaz's arrest in the first place. Thus, the fact that Solis-Diaz was formally charged with and acquitted of the assault charge has only some relevance to the excessive-force analysis.

The limited relevance that the formal charge and acquittal have in this case is substantially outweighed by the danger of confusing the issues and misleading the jury.[25] Solis-Diaz's own argument highlights this risk: "The acquittal evidence answers the question for the jury as to whether Solis had committed any criminal act by his fateful conduct in the early morning hours of April 22, 2010, inside his own garage."[26] But Solis-Diaz's argument greatly overemphasizes the impact of his acquittal on this civil excessive-force claim. As the Supreme Court has explained, an acquittal "merely proves the existence of a reasonable doubt as to [the defendant's] guilt," it does "not negate the possibility that a preponderance of the evidence could show" otherwise in a subsequent civil case with a lower evidentiary burden.[27]

---

[24] ECF No. 60 at 4.

[25] Fed. R. Evid. 403.

[26] ECF No. 66 at 6.

[27] *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984); *see also Borunda v. Richmond*, 885 F. 2d 1384, 1387 (9th Cir. 1988) (citing S. Gard, 2 Jones on Evidence, § 12:25, p. 391 (6th ed. 1972)) ("Evidence of an acquittal is not generally admissible in a subsequent civil action between the same parties since it constitutes a 'negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt.'").

6

Solis-Diaz acknowledges that "[t]his civil trial is predicated upon the exact same factual scenario as presented in the state-court criminal trial. There will be no deviation in this case from the factual testimony as to how and why Solis[-Diaz] was shot by Officer Tompkins, which was previously presented in the criminal action."[28] But the standard of proof and the focus of the inquiry will be markedly different. The jury will be asked to "judge the reasonableness of" Tompkins's "use of force from the perspective of a reasonable officer on the scene" and to apply the *Graham v. Connor* factors, which include an assessment of the nature of the crime and other circumstances that Tompkins knew at the time he pulled the trigger, how long he had to assess those circumstances, and whether Solis-Diaz posed an immediate threat to the officer's safety.[29] And while the state-court jury that acquitted Solis-Diaz of the assault charge would have focused primarily on Solis-Diaz's conduct,[30] "the calculus of reasonableness" in this civil action "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[31] In light of this significant difference in standard and focus, evidence of Solis-Diaz's criminal charge and acquittal will only serve to mislead the jury and confuse the issues.

In sum, I find that the probative value of the formal charge and acquittal evidence is substantially outweighed by the danger of confusing the issues and misleading the jury, and I exclude it under FRE 403. The prejudice that concerns Solis-Diaz—that the jury will needlessly and unfairly assume that he was found guilty[32]—can be sufficiently mitigated by a jury instruction that the jurors

---

[28] ECF No. 66 at 5.

[29] *See, e.g., Graham v. Connor*, 490 U.S. 386, 397 (1989); Ninth Circuit Model Civil Jury Instruction 9.25.

[30] When Solis-Diaz was charged, NRS 200.471 defined assault as "(1) Unlawfully attempting to use physical force against another person; or (2) Intentionally placing another person in reasonable apprehension of immediate bodily harm."

[31] *Graham*, 490 U.S. at 396–97.

[32] ECF No. 66 at 4–5.

must not consider the outcome of the charge of arrest when deciding this case.[33]  The parties should propose the language for this instruction during the charge conference.

### Conclusion

IT IS THEREFORE ORDERED that the parties' motions in limine **[ECF Nos. 60, 63] are GRANTED in part and DENIED in part**:

- Evidence that Sunrise Hospital gave Solis-Diaz a contractual adjustment on his hospital bill is collateral-source evidence that may not be introduced at trial; and
- Evidence that the District Attorney charged Solis-Diaz with, and a jury acquitted him of, assault with a deadly weapon will be excluded from trial under FRE 403.

DATED January 25, 2017.

_____
Jennifer A. Dorsey
United States District Judge

---

[33] *See, e.g., Adams v. Szczerbinski*, 329 Fed. Appx. 19, 24 (7th Cir. 2009) (unpublished) (affirming trial court's exclusion of acquittal evidence and finding that a jury instruction directing "the jury not to be concerned with the outcome of the criminal trial" was "sufficient to address [the] concern that the jury might speculate whether it would be finding in favor of a person convicted of a criminal offense arising out of the underlying events").