|     |                          |                                      |
| --- | ------------------------ | ------------------------------------ |
|     | **UNITED STATES DISTRICT COURT**                                |
|     | **DISTRICT OF NEVADA**                                          |

| Juan Solis-Diaz,         | 2:12-cv-0619-JAD-GWF           |
| ------------------------ | ------------------------------ |
|    Plaintiff | **Order Denying Motion for New Trial** |
| v.                       | [ECF No. 101]                  |
| Officer S. Tompkins,     |                                |
|    Defendant |                             |

      This excessive-force lawsuit arose from a series of unfortunate events. Laid off and depressed, Juan Solis-Diaz put his kids to bed late one night, took his contact lenses out, and retreated to his study to drink beer and blow off steam in an anger chatroom on his computer. When he heard noises outside, he feared that hippies were trying to break into his SUV parked on his dark driveway, so he grabbed his AK-style rifle, pressed the button to open his automatic garage door, and "half sprinted" through the garage toward the driveway.

      At the same time, Las Vegas Metropolitan Police Officer Tompkins was walking up that driveway. He had cut short the traffic stop he was conducting on the street when he heard yelling coming from inside the Solis-Diaz home. Suspecting a domestic altercation, Tompkins called for back up, stepped away from his patrol car with its lights activated, and walked up the driveway toward the front door to check on the occupants. When the garage door began to open, he saw the backlit silhouette of Solis-Diaz, armed and crouching below the door. As Solis-Diaz stood with the rising door, he pointed his gun toward Tompkins.

      Tipsy and without his prescription lenses, Solis-Diaz took several seconds to realize that the man in his driveway was a law enforcement officer. In that time, Tompkins drew his gun, ordered Solis-Diaz to drop his weapon, heard Solis-Diaz respond with an expletive, and then began shooting as he retreated toward his patrol car for cover. Solis-Diaz sustained two non-fatal gunshot wounds, and he sued Tompkins under § 1983. The three-day jury trial ended with a defense verdict.

Solis-Dias now moves for a new trial, arguing that defense counsel's improper vouching during summation deprived Solis-Diaz of a fair trial.[1] Although I find that a handful of defense counsel's statements were improper, because they do not rise to the level of plain or fundamental error, I deny the motion for new trial.

**Discussion**

"The federal courts erect a 'high threshold' to claims of improper closing arguments in civil cases raised for the first time after trial."[2] "Generally, misconduct by trial counsel results in a new trial if the 'flavor of misconduct sufficiently permeates an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'"[3] Solis-Diaz takes issue with 22 statements that defense counsel made during his closing argument, though he objected to just one. I review that challenged statement for abuse of discretion and apply a harmless-error standard.[4] I review all other challenged statements under the plain-error standard.[5]

**A.    The lone objection**

The bulk of defense counsel's 17-page closing argument was structured around Jury Instruction # 5, the excessive-force instruction.[6] That instruction advised the jury that its job was to "judge the reasonableness" of Officer Tompkins's force "from the perspective of a reasonable officer on the scene" and based on the totality of circumstances.[7] The defense's opening

---

[1] ECF No. 101. I find this motion suitable for disposition without oral argument. L.R. 78-1.

[2] *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002).

[3] *Id*. at 1192 (quoting *Kehr v. Smith Barney*, 736 F.2d 1283, 1286 (9th Cir. 1994)).

[4] *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1150 (9th Cir. 2012) ("Where Defendants objected at trial, we review a district court's determination that there was no prosecutorial misconduct for abuse of discretion, and we apply harmless error analysis.").

[5] *Draper v. Rosario*, 836 F.3d 1072, 1084–85 (9th Cir. 2016).

[6] *See generally* ECF No. 100 (transcript).

[7] ECF No. 91 at 3 (Instruction No 5).

statement similarly focused on the reasonableness standard. Near the beginning of defense counsel's summation, he reminded the jury, "In my opening statement, . . . I told you that when you heard all the evidence you would be asked whether Officer Tompkins acted reasonably under the circumstances and I told you it would be an easy yes. The evidence has shown that and I stand by that statement."[8] Just past the midway point in defense counsel's closing argument, he was summarizing evidence at the trial and asking rhetorically whether various conduct by Officer Tompkins was "reasonable," when this exchange occurred:

| | |
|---|---|
| Defense counsel: | Here's the question that decides the day. Was it reasonable for [Tompkins] to fear for his safety when Mr. Solis-Diaz rose up, issued the expletive in a confrontational tone, and raised the rifle? There is absolutely no question that Officer Tompkins has the right to go home. When you become a police officer, you do not enter into a death pact where you agree that you will take fire before you fire back. He has every right that all of us has to go home; he just has to act reasonably. Have I told you anything that is unreasonable at this point? . . . |
| Plaintiff's counsel: | Your Honor, just for the record, I would just enter an objection for vouching. |
| The Court: | I'm sorry. I didn't hear that. |
| Plaintiff's counsel: | **Objection for vouching. Saying "I haven't told you anything unreasonable."** |
| The Court: | Okay. Overruled.[9] |

The rest of the argument proceeded without objection.[10] Solis-Diaz did not move for a mistrial.

The Ninth Circuit clarified the scope of improper vouching last year in *Draper v. Rosario*. It explained that there are two kinds of improper vouching in closing arguments. The first—which is a problem only in criminal cases—is when the prosecutor places "the prestige of

---

[8] ECF No. 100 at 3–4.

[9] ECF No. 100 at 10–11 (emphasis added). The objected-to statement is #11 on Solis-Diaz's list of challenged statements. *See* ECF No. 101 at 4.

[10] Solis-Diaz's characterization of this single objection as one for "persistent vouching," ECF No. 101 at 5, ¶ 12, is not supported by the record. The objection was to a single statement, not to any "persistent" conduct.

3

the government behind a witness through personal assurances of the witness's veracity."[11] The second kind of vouching, "problematic in both civil and criminal trials," is "relying on evidence outside the record."[12]

Defense counsel's rhetorical question "Have I told you anything that is unreasonable at this point?" falls into neither category. "During closing argument in a civil case, counsel is permitted to make inferences and advance 'plausible arguments in light of the record."[13] Asking a rhetorical question like this, when it is well tied to the evidence and central jury instruction as this was, is "proper because it call[s] for an inference directly based upon evidence in the record."[14] At most, this question was an "oratorical flourish" that the courts have long deemed permissible during summation, in which "attorneys are allowed reasonably wide latitude."[15] Plaintiff's counsel's objection was properly overruled.

**B.     The newly challenged statements**

The other 21 statements with which Solis-Diaz now takes issue drew no objection at trial. Thirteen of these statements are, or ask the jury to draw, permissible inferences based on the evidence. Two are fair comments on the applicable law and burdens, and two are misstatements of the law. Four are improper vouching. I review these comments for plain or fundamental error.

**1.     Fair comment on the evidence.**

Statements 6–10, 14–16, and 18–22 are permissible comments on the evidence. They can be further divided into two categories: (1) comments on Solis-Dias's credibility as a witness and

---

[11] *Draper*, 836 F.3d at 1083 (quoting *U.S. v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993), *as amended on denial of reh'g* (Apr. 15, 1993)).

[12] *Id.*

[13] *Id.* (quoting *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 518 (9th Cir. 2004)).

[14] *U.S. v. Weatherly*, 525 F.3d 265, 272 (3d Cir. 2008) (finding prosecutor's rhetorical question during closing argument not improper vouching and, regardless, harmless error).

[15] *United States v. Lester*, 749 F.2d 1288, 1301 (9th Cir. 1984).

the strength of the plaintiff's evidence (statements 6, 7, 10, 15, 18, and 21); and (2) the reasonableness of Officer Tompkins's conduct (statements 8, 9, 14, 16, 19, 20, and 22).

Defense counsel's comments suggesting that Solis-Diaz's testimony could not be believed were fair inferences from the evidence.[16] Factually (as even the Ninth Circuit recognized on interlocutory appeal from my denial of Tompkins's request for summary judgment based on qualified immunity[17]), this case focused on what exactly happened between the moment Tompkins spotted Solis-Diaz beneath the rising garage door and when the shooting stopped. Solis-Diaz made various (often inconsistent) claims and demonstrations of how he moved through the garage and held the gun as the door rose. During his cross-examination of Solis-Diaz, defense counsel teased out many inconsistencies between Solis-Diaz's trial testimony and previous statements (e.g., about the reasons for his stress, his intoxication level, the pace at which he approached the garage door, where the nose of the gun was pointing, and whether he was still holding some part of the gun when the shooting started). Solis-Diaz also admitted on cross that he was "tipsy" and acknowledged that his blood alcohol level was .232 upon arrival at the hospital. In light of this evidence, defense counsel's statements about Solis-Diaz's believability and the strength of his theories were fair game.[18]

This is also true for statement #6, in which defense counsel highlighted the fact that the

---

[16] *Cf. United States v. Birges*, 723 F.2d 666, 672 (9th Cir. 1984) ("It is neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant who has taken the stand.").

[17] *Solis-Diaz v. Tompkins*, 656 Fed. Appx. 294, 296 (9th Cir. 2016).

[18] These comments are not rendered improper vouching by the fact that defense counsel couched them in terms like, "I don't even have words" to respond to these statements, "sorry you had to sit through that," or "I am gonna tell you, at a minimum, that you cannot . . . rely on anything Mr. Solis-Diaz said . . . ." ECF No. 101 at 4. At bottom, these were just arguments based on reasonable inferences from the evidence at trial. And as the Supreme Court expressed in *Donnelly v. DeChristoforo*, 416 U.S. 637, 646–47 (1974), closing arguments "are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear." This is why attorneys are given "wide latitude in closing arguments." *United States v. Wilkes*, 662 F.3d 524, 538 (9th Cir. 2011).

plaintiff "did not bring one witness who would support his claims":

> He couldn't find one person with law enforcement training, with a law enforcement background to come here and testify on his behalf. You're gonna ask someone for $1.5 million and you're not gonna bring one witness that says this is the face of police brutality? Not one witness? What a waste of your time. His wife wouldn't even come and testify about his damages, about how this impacted him. Nobody would come. You decide what that means.[19]

Though dramatic, this was a proper topic for comment.[20] And defense counsel made it clear that the significance of these missing witnesses was up to the jury to decide. This statement is also mitigated by jury instruction # 10, read just before summation, which includes the direction that "The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify."[21]

Comments on the reasonableness of Officer Tompkins's actions were also clearly allowed. Reasonableness was the touchstone of this case. The jury instructions advised, "a police officer may use only such force as is 'objectively reasonable' under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight."[22] The jury was further given a list of circumstances to consider, including "the parties' relative culpability; i.e., which party created the dangerous situation and which party is more innocent."[23] Officer Tompkins not only testified in detail about how the events unfolded on the evening in question, he described the thoughts and feelings he encountered, his motivations in taking action,

---

[19] ECF No. 100 at 5:2–10 (referenced in ECF No. 101 as statement # 6).

[20] *See, e.g., U.S. v. Necoechea*, 986 F.2d at 1273, 1282 (9th Cir. 1993) ("prosecutor is entitled to comment on a defendant's failure to present witnesses so long as it is not phrased to call attention to the defendant's own failure to testify.").

[21] ECF No. 91 at 7 (Instruction No. 10).

[22] ECF No. 91 at 3 (Instruction No 5).

[23] *Id*.

the Metro policies that he had to follow, the training he had been given, and how he drew on that training in this situation. So statements 8, 9, 14, 16, 19, 20, and 22, all of which are fair inferences from that evidence and went toward the reasonableness of Officer Tompkins's conduct, were also permissible.

### 2. Statements of law

Statements 3, 5, 6, 13, and 17 contain a discussion of the law and burdens of proof in this case. Jury instruction # 5 made it clear that "Plaintiff's claim is for excessive force" and laid out all the legal considerations that the jury would need to weigh for that claim.[24] In an apparent effort to reframe the legal standard in layman's terms, defense counsel explained that "Excessive force is another term for 'police brutality.' When you hear the term on the news, in the paper, and you hear the term 'police brutality,' they are talking about excessive force. . . . If you find for Mr. Juan Solis-Diaz, you are saying this is the face of police brutality."[25] He tied this explanation to the jury instruction itself, explaining that jury instruction #5 "tells you what you have to find. . . . it's located on page 3. It explains to you what police brutality is and how you find it. It's pretty much the reasonableness standard we've talked about, but they give us 10 points to consider."[26] And through the rest of the closing argument, defense counsel relied on the term "police brutality" to discuss the burden of proof for the excessive-force claim.[27]

The initial, colloquial reframing in statement # 3—though dramatic—was not a misstatement of the law. Nor was the reference to jury instruction #5 as the "police brutality" instruction. But the following statements were less than accurate representations of the law and the parties' respective burdens:

> #5   It is Mr. Solis-Diaz's burden to convince you that that is the face of police brutality, that the officer is incompetent and he's incapable of protecting this

---

[24] ECF No. 91 at 3.

[25] ECF No. 100 at 3:11–16 (referenced in ECF No. 101 as statement # 3).

[26] ECF No. 100 at 12:16–20 (referenced in ECF No. 101 as statement # 17).

[27] *See generally id*.

7

community.

Although this statement accurately puts the burden of proof on the plaintiff, incompetence and incapability of protecting the community are not true standards.

  #13 [while defense counsel was trying to get the audio clip of the radio transmission of the incident to play] I still may not be able to get this to work. The reason I think it's important—or I know it's important—is I wish you could have heard it more than once because you've heard Scott Tompkins testify; you've seen him; you know his demeanor. To hear his voice, to say that man did not feel an immediate threat is insulting. He was scared to death of the person screaming profanities at him and pointing the weapon. But you know what he does after he fires and he collects himself? He goes right back to his training and gets that man medical attention . . . Is that the face of police brutality? Is that an incompetent officer?

Most of this statement is proper comment on the record evidence. But the last question, "Is that an incompetent officer?" again suggests a standard that does not exist.

  **3.** **Improper vouching**

"Counsel in a civil trial may not rely on evidence outside the record during closing argument."[28] But during closing argument, defense counsel did just that. He told the jury:

  #1 It's really humbling to be up here today because Officer Tompkins 6 years ago never met me. He didn't know me; he didn't know my law firm. And today he has to sit here . . . hoping that I can explain his story the way that he tried to explain it to you from the stand . . . .

  #2 Officer Tompkins is asking for something much more valuable [than a financial reward]; he's asking you for his reputation back.

  #4 I get a little bit fired up and I don't mean to because a finding against Officer Tompkins will change his life. From this point forward, he will have to tell people that he was found by a jury of his peers to be an incompetent police officer who violated the constitutional rights of an American citizen. He will have to answer that question in the affirmative for the rest of his life.

  #23 You come back in this room and you thank him for the job he does, for putting his life on the line to help others make our lives better. Something I would never dare do. You'll check "no" on that box, you'll provide Officer Tompkins his reputation back, and you will go home tonight and you will sleep well.

There was no evidence at trial that Officer Tompkins and his attorney were strangers until six years ago, or that the officer had lost his reputation and was hoping to regain it through a defense

---

[28] *Draper*, 836 F.3d at 1084.

verdict. And nobody testified that a defense verdict would be life changing for the officer or that, if Solis-Diaz prevailed, the officer would have to report that he was found "to be an incompetent police officer." Statements 1, 2, 4, and 23 were unquestionably improper vouching.

### 4. Plain error review

Though defense counsel's statements 1, 2, 4, 5, 13, and 23 were clearly improper, they did not rise to the level of plain error that necessitates a new trial. "Plain error review requires: (1) an error, (2) the error is plain or obvious, (3) the error was prejudicial or effects substantial rights, and (4) review is necessary to prevent a miscarriage of justice."[29] "Plain error is a rare species in civil litigation, encompassing only those errors that reach the pinnacle of fault envisioned by" this standard.[30] It is only in the "extraordinary case[]" that plain error will be found.[31] The district court commits plain error "where the integrity of fundamental fairness of the proceedings in the trial court is called into serious question."[32]

Even if defense counsel's errors were plain or obvious and that I could—and should—have corrected them *sua sponte* during closing argument, Solis-Diaz has not shown that he suffered prejudice. "The burden of making a concrete showing of prejudice resulting from improper closing argument falls upon" the movant.[33] The court must consider "the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself."[34]

---

[29] *Hemmings*, 285 F.3d at 1193.

[30] *Id.* (quoting *Smith v. Kmart Corp.*, 177 F.3d 19, 26 (1st Cir. 1999)).

[31] *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1148 (9th Cir. 2001).

[32] *Id.*

[33] *Hemmings*, 285 F.3d at 1193 (quoting *Moses v. Union Pac. R.R.*, 64 F.3d 413, 418 (8th Cir. 1995)).

[34] *Id.* (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Constructora Lluch, Inc.*, 169 F.3d 68, 82 (1st Cir. 1999)).

Solis-Diaz's prejudice argument is short and conclusory. He baldly argues that his "due process rights to a fair trial were abrogated by the unhindered Defense vouching, which clearly relied on arguments and concepts never presented to the jury during the trial phase." But the totality of circumstances do not support this conclusion. Solis-Diaz's testimony was that he didn't intend to point his gun at Tompkins, though it could have looked that way to the officer. And he claimed that he was dropping the gun and had held his hands up in a surrender motion before Tompkins began shooting, making the officer's actions unreasonable as a matter of law. Tompkins testified that he was "100% without a doubt certain" that the gun was pointed directly at him, and he said that he never saw Solis-Diaz with raised or empty hands.

The two subjects of the car stop corroborated Tompkins's account of the events.[35] They both testified that, as they drove away, they saw Solis-Diaz point the gun outward. The crime-scene analyst testified that the bullet-hole locations corresponded with Tompkins's story that Solis-Diaz did not have his hands up in a surrender position. No witness corroborated Solis-Diaz's story. This additional evidence, coupled with Solis-Diaz's intoxication and vision impairment during this unfortunate incident caused the scale to tip sharply in favor of the defense. So this was not (as Solis-Diaz contends in his reply) a close case like *United States v. Sanchez*, in which the Ninth Circuit could not "comfortably assume that the jury would have convicted" the defendant without the prosecutor having asked the jury to "send a memo" to drug dealers with his conviction, in light of "the scarcity of evidence for either side. . . ."[36]

Jury instructions also neutralized any impact that defense counsel's improper statements could have had on the jury. The jury was instructed just before closing arguments:

- "you must decide the case solely on the evidence before you. You will recall that you took an oath to do so." [Instruction # 1]; and

- "In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. . . . Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their . . . closing arguments and at

---

[35] Testimony of Phillip Redmond and Latoa Toalepai was read in.

[36] *U. S. v. Sanchez*, 659 F.3d 1252, 1260–61 (9th Cir. 2011); ECF No. 104 at 3 (reply brief).

other times is intended to help you interpret the evidence, but it is not evidence." [Instruction # 8].[37]

The jury was also provided in jury instruction #5 with the factors it could consider in deciding the excessive-force claim, and those factors did not include whether the officer was "incompetent."[38] As the Ninth Circuit explained in *United States v. Rodrigues*, "[t]he jury is regularly presumed to accept the law as stated by the court, not as stated by counsel."[39] And we can rely on that presumption here.

In sum, defense counsel's improper statements during summation do not require a new trial. The misconduct was isolated to closing argument. This was not a close case in which misstatements of the parties' burdens and outside-the-record evidence likely tipped the scales in favor of the plaintiff. The plaintiff offered just one objection—and the statement that drew the objection was not actually vouching—and he did not move for a mistrial.[40] And the jury instructions, which we presume the jury followed, neutralized the impact of any of these errors. Accordingly, I deny the motion for new trial.

## Conclusion

IT IS THEREFORE ORDERED that the Plaintiff's Motion for New Trial **[ECF No. 101] is DENIED**.

DATED: September 25, 2017.

_____
U.S. District Judge Jennifer A. Dorsey

---

[37] ECF No. 91 at 1, 5. *See also Necoechea*, 986 F.2d at 1283 (holding that "the vouching that occurred during closing argument was effectively neutralized by the court's instruction that comments of counsel are not evidence.").

[38] *Id*. at 3–4.

[39] *United States v. Rodrigues*, 159 F.3d 439, 451 (9th Cir. 1998); *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270–71 (9th Cir. 2000) (we presume that the jury follows the court's instructions on the law).

[40] *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991) (denying motion based on similar considerations).